Case will be adopted 2-16-0721, People of the State of Illinois plaintiff Appeline v. Sheriff James Norris, Defendant Appellant. Arguing on behalf of the Defendant Appellant, Mr. James K. Appellant. Arguing on behalf of the plaintiff Appeline, Mr. James F. French. Mr. Levin, you may proceed. Thank you, Your Honor. Good afternoon again, Your Honor. James Levin for the Defendant. The issue here is that the search of the Defendant's automobile violated the Fourth Amendment. Searches without a warrant are per se unreasonable, but in this case, the State is arguing that there is exceptions to the warrants requirement applied here. Would one of those be searches valid, valid search incident to arrest, would that be a basis? That's correct, that's one of the basis they argue. So you're going to be arguing that the searcher was not incident to arrest? Correct, yes, just a few theories. So one of them is, and we're relying on the Arizona v. Gants case, the question is did the Defendant, when he was handcuffed, and brought away, relocated a far distance away from the car, an officer was standing over him. The question is under Gants, Arizona v. Gants, did the Defendant have access to the interior of the automobile such that he would be able to destroy evidence? And it's very clear in this case that under Gants, he didn't have that kind of access. He was handcuffed, his hands couldn't move, he couldn't gain access to the car. Now another principle discussed in Gants is a search incident to arrest can be made if there's a reasonable basis to believe that evidence relevant to the crime of arrest can be found in the car. That wasn't the case here? They can't make an argument that there was a matching description of the car, the pants, money was taken? One closing argument, the state argued that the crime of arrest was going through a stop sign. And Gants specifically held that when the arrest, if there's an arrest and it involves something akin to a traffic violation, there's going to be nothing found in the car that's incident to their arrest. Let's assume that that was the argument. You could argue, you know, it might have been a little bit short-sighted, but in this case, one of the considerations for me is did probable cause exist to arrest the Defendant for something more serious than a traffic violation, namely the armed robbery? And the second part is if the probable cause exists before the Defendant is taken out of the car and handcuffed, doesn't that still allow for the arrest to be valid as long as probable cause existed before he was taken out of the car? Well, I think there are some other considerations at work here. One was that he was arrested after the search occurred. Right, but did probable cause exist to arrest him for the robbery before he was actually arrested? Well, I would argue no under that because they found the gun pursuant to the search. And what they argued at the lower court levels is they argued that once they found the gun, they had probable cause to arrest for the armed robbery, but they found the gun as a result of the search. And here's what I'm getting hung up on. You keep citing the prosecutor's closing argument. Is that what we're bound by? Do we make a ruling based on the closing argument, or do we consider the totality of the evidence that is presented at the issue? I'm not aware of the fact that we can only look to the argument of counsel. Well, we look at what was raised at the lower court level, look at the totality of the circumstances of what happened. Right, of the evidence, not just the prosecutor's argument. Well, we look at everything. So to summarize under the search incident to arrest exception, my number one argument, no access to the evidence. Number two, not relevant to the crime of arrest, which happens to be for a traffic violation. Number three, the arrest for the armed robbery occurred post-search. It wasn't search incident to arrest, but the search came first prior to the arrest. Does that per se make the stop in the arrest illegal? Does the search always, does the arrest always have to precede the search? I don't think the case law says it, does it? Well, it says if the search happens before the arrest occurs, then that's not proper. That's not what Rawlings v. Kentucky says, right? In Rawlings, I believe the defendant was, basically he was arrested after the search. If the arrest occurs simultaneously with the search, the search might be proper under those circumstances. But here, and I'm not relying exclusively on that doctrine, but here I think it was the Beck case, if I recall, where the search definitely occurred after the arrest, and that's what we have here. Now, you also cited Gantt, which I don't know overruled Rawlings or any Illinois authority, but in Gantt, you're right, the holding was two-pronged. The court said that an officer may search a vehicle, one, when an arrestee is within reaching distance of the vehicle to get a weapon or something, and they agreed with the defense position in that case because that's what they found was violated. They also said, two, as you indicated, when an arrestee is within, excuse me, it is reasonable to believe the vehicle contains evidence of the offense of the arrest. But in Gantt, I don't believe they ever got into the second issue. So isn't Gantt distinguishable here? Gantt turned on whether or not he could reach a weapon. He couldn't, given his physical proximity. Therefore, they questioned it on that basis. Gantt, this case didn't involve a discussion, or Gantt didn't involve a discussion in the facts of that case about whether or not the evidence was in a vehicle, right? Well, I think it did contain a discussion of that second section. That's why I discussed it in the brief, is that the issue is, is it reasonably probable that they're going to find evidence relevant to the crime of arrest? And he's going to argue, in this case, it was. Well, there's two problems with it. One is the crime of arrest is the traffic violation. And two, the search preceded the, what was termed in the lower court as arrest, based on the armed robbery. The search proceeded that. The search turned up the gun, turned up the other weapons. Counsel, did they have to have the gun in order to have enough for an arrest for armed robbery? What about some of the other things that the officers did? There were some other things with the car, but that was one of the main agreements, one of the main reasons why. Right, but I'm talking about the observations that the officers made when they approached the vehicle ostensibly to inquire of the driver and issue their ticket. And they notice other things that would have amounted to probable cause? Well, the issue of probable cause to search the vehicle wasn't raised in the lower court, but I think Your Honor, Justice Jordanson brings up a very good point, and that is that a ticket was issued. If a ticket was issued, that supports my argument that the crime of arrest is for a traffic violation, and therefore, there's no evidence that can be found in the car that's relevant to the crime of arrest. So therefore, the search incident to arrest doctrine would not apply here for that reason. So are you saying that any time there's a report of a robbery and the officers see the vehicle commit a traffic violation, if they write him a traffic ticket, that's it, the case is over. Does it matter what they find in the car later? Is that what you're saying? No, I mean... You said a traffic ticket was for something, a traffic violation. What's that got to do with it? But here, relevant to the crime of arrest, that's the test. I mean, there are other exceptions to the warrant requirement that the police could try to argue. They could try to argue probable cause to search the vehicle, for example. But of course, the state can argue that in the lower court. And as I pointed out in my reply brief, they forfeited that issue. So who was saying that he was arrested and taken into custody because of a speeding ticket? Who's saying that? Well, as I said, I mean, one thing is I pointed out in the closing argument that that's exactly what they said, what the state said, is that he was arrested for going through a stop sign. And then as Justice Jorgensen pointed out, he was issued a traffic ticket. So that's highly relevant to the issue I'm raising. I guess I'm saying, I don't mean to reach you to the point of getting absurdity, but if somebody is stopped for speeding and they write a ticket and they say a dead body in the backseat of the car, does that mean they can't arrest him for having a dead body in his car because they gave him a traffic ticket? No, the state would argue probable cause to search the vehicle. So you're saying, look, that's waived, that's off the table because they never raised it in the trial court. Correct. They only raised search incident. They argued search incident, MSR. Yeah, and the inventory. Inventory, right, those three things. So we cannot look at and or consider whether there was probable cause to search the car. Yes. As an independent basis to search the vehicle. Right, and I cite a case law in my reply to support that proposition. So I agree with you, Your Honor, Justice Hudson, that in the urban fashion scenario they could search the car if they see a dead body back there, but they would search it under the probable cause to search the vehicle exception to the warrants requirement, but the state cannot do that here because they forfeited it. So I'd like to move on. In my support as an exception under the search incident to arrest, that issue has been fully briefed, opened, and replied briefly. I'd like to get on to the search. It was invalid as an inventory search, and what the case law points out there is that in order for the state to avail itself of that exception, they have to make the search pursuant to standardized procedures. Here we have Aurora officers making the inventory search, but the Aurora officer acknowledged in their examination that Naperville had taken custody of the car, and Aurora policy says that Aurora officers cannot do a search if Aurora did not take custody of the car. So they can't avail themselves of that procedure. Basically what we have here is instead of an inventory search, we have a general rummaging of the car looking for evidence of crime. So the state cannot avail themselves of the inventory search exception. So you're saying Aurora has a policy that they can't inventory a car that is part of a traffic stop unless they take the violator into custody. Is that what you're saying? Custody of the car. I mean custody of the car, and they didn't do it here. Right, and they admitted all this. They said that Naperville took custody of the car, and he said Aurora policy is we don't do the inventory search if we, that means Aurora, are not taking custody of the car. Okay. Plus another factor here is we have one of the officers located a BB gun in the car, but they didn't record that as inventory. He took the BB gun out and put it back in there without recording it, and one of the other officers criticized him for that, and that's not consistent with doing an inventory search when you take something out of the car and put it back in without inventorying the items. So I'm going to move on to the third exception to the law. Did Naperville take the car ultimately? I'm not sure if that was made clear in the record, but one thing I'd like to point out that I'm clear about is that the Aurora officers very clearly without ambiguity stated that Naperville had taken custody of the car and that Aurora policy does not allow them to do an inventory search if Naperville has taken custody of the car. When did Aurora know that Naperville was taking custody of the car vis-a-vis their entry into the vehicle? They knew it when they did the inventory search. That was made clear in the record that they knew it was. So there were two searches in. There was the first search where they, you talked about they found the gun, and then a second search for inventory purposes? No, I think this was all part of one search, and they did the inventory search and then they located many of these items during the search, the gun. And your position is at the time they entered the vehicle, Aurora entered the vehicle, they knew that Naperville was going to take custody of that car. Is that your position? That's what they testified to at the hearing. Yes, it is my position that the Aurora officers plainly and clearly admitted that Naperville, this is Naperville's situation, they had taken custody of the car, and Aurora's standardized procedure is not to do an inventory search unless Aurora takes custody of the car. And they admitted that it was Naperville's problem, Naperville had custody of the car. And they knew that when they entered the car? Yes, yes. Okay. And I would defer to the record, but that's my understanding of the record. Unless the court has any further questions, I would like to move on to the MSR search. And in that case, in that situation, I rely on two cases, the People v. Coleman in Illinois case and the Samson v. California case, which is the U.S. Supreme Court case. And what the court's held is the search cannot be justified by a person's MSR status or parole status if it's another state. If the officer carrying out the search did not know of the person's MSR status, it's undisputed here that the officers, when they conducted the search, did not know of the defendant's MSR status, so they cannot avail themselves of the MSR search exception to the warrant requirement. So as I did argue, the last point is that the state forfeited the probable cause issue. I have nothing further unless the court has any more questions of me. Thank you. You'll have an opportunity to make rebuttals, sir. Thank you. Mr. French, you may proceed. Your Honors, good afternoon. May it please the Court, my name is Jim French. I represent the people of the state of Illinois. I think the best way to start my argument right here is to just go directly to the record and talk about these waiver arguments that counsel had talked about before. And I'm going to direct Your Honor's attention to page 260 of the record, and this is the state's closing argument that we've been talking about. And the assistant state attorney states that in plain view gave rise to, well, moving on a little bit, at that point the bag full of cash had probable cause to arrest him, probable cause to believe that the vehicle had fruits of a robbery, and that evidence would be found inside. So there they're arguing both probable cause to arrest him for the crime of robbery and then probable cause in general after that. So search incident to arrest, probable cause generally in a motor vehicle accession there. Moving on to page 277, the assistant state's attorney says they certainly have probable cause to believe that the evidence of a robbery may be found in the defendant's vehicle. The paragraph before that, they talk about probable cause to arrest him right there as well. In the paragraph after that, they're talking about people versus Daniel and Terry Stocks, which is another issue that counsel had brought up in his reply, excuse me, reply to me, that he states that the people way as well. What do you make of his argument that the state's attorney allegedly said in closing argument he was arrested because of a traffic stop? I don't think that's true. I think their argument was that they had probable cause at that point, and that point that they're talking about is right when the officer gets to the car, and he's looking into the car, and he sees all these things, a bag full of cash, essentially the burglar's suit with the black cap, black gloves. So nobody said he was placed under arrest because of a traffic violation? No. I think the assistant state's attorney does say that here's an argument I don't want to waive in the lower court. That's not an exact quote, but that's essentially what he's saying. I don't want to waive this argument that if your Honor finds that there was no probable cause for whatever reason because there was tons of probable cause here, to arrest him for robbery or to search based on the evidence of the robbery, that here's another line of thought. So he gave it as an alternative, not the sole basis for the argument. Correct, 100 percent correct. And it's clear when you go through the entire record, you look at the defense attorney's argument and the judge's ruling, everybody understood that that's what was happening, that they were arguing probable cause to arrest and probable cause to search as well. What do you make about his argument may have some intuitive appeal? He's arguing that Gantt controls here. The Gantt decision by the Supreme Court controls here, and because the arrest took place after the search, it should be controlled by Gantt. I take it you've looked at Gantt, right? I have, Your Honor. Does Gantt control here in this factual scenario? I would answer your question in a couple different ways. First is there's multiple reasons why an officer can search a vehicle. One of those is search incident to arrest, and Gantt is the head honcho. It's the main case on point there. What I disagree with counsel is that, as Your Honor has been speaking about with him, does that search have to come before an arrest? And the case law says that it doesn't. Now, I don't disagree with what he quoted in his opening brief, that what you find because of that search you can't then use as the sole justification for that arrest. But that's not what we have here. The officers get up to the car. They see this what we call probable cause. Well, delineate it for us because he's saying I asked him if there was probable cause, and naturally he's an advocate. He refused to concede there was. But what information specifically did the police receive over the dispatch that they observed when they walked up to the car to corroborate the argument that there was probable cause to believe they committed this crime? Sure. The officers knew that there was a 7-11 that had been the victim, for lack of a better term, of an armed robbery. They knew that it was a person wearing dark clothing. They knew it was a black or brown man wearing silver pants. Is that what they observed when they walked up to the car? Absolutely. And in addition to that, they see the bag full of cash sitting there staring them in the face. In plain view? Absolutely. And that was reported as just being taken from the robbery. Excuse me? Just being taken from the robbery. They saw that. Yes. Wait, was that in the dispatch that a plastic bag or a container was used? I don't believe I recall that. It was at some point. It was cash taken. It was at some point. I don't believe it was in the plastic bag. It was at some point included. But they said cash was taken. Correct. Okay. And the significance of it being in that grocery-style bag is, for lack of a better term to use the same term again, significant. And when you look at the video, People's Exhibit 21, you can kind of see the light bulb turn on in the officer's head. He gets up. He does about a 15-second assessment of what's going on in the car. And then he tells the defendant, if you move, you're going to get shot. And the reason that he tells him that at that point is because he knows this guy's the armed robber that they've been out looking for. And you have to couple that with everything that they saw. And the interesting thing on point is the People v. Henry case that people say that's from here in the 2nd District is so analogous to the situation we have here, where it's a similar type of store that's being robbed. One of the first things they look at is how is the person traveling from the scene of the robbery there. Although in the Henry case, although it was snowy, I believe the person proceeded through a stoplight. Here you have multiple things. You have a guy going 40 miles an hour down a residential street where it's a 25-mile-an-hour speed limit. He's blowing through stop signs. So you've got a reasonable, articulable suspicion to stop the car. That shouldn't be in dispute, right? It's not. Okay. All right. Then you're saying he walks up and he makes all these observations. Apparently the observations confirm what the dispatch said. Correct. And you have to look at how the defendants reacted, too. The officer was calm and nervous. You can hear on the audio during the traffic stop, he's disagreed with the officers about things that are playing in the audience. They're talking about the bag of cash that they see, and he's saying, well, what are you guys talking about? What are you talking about? And they announce over the dispatcher to each other that he's got the silver pants on, and he says, oh, these are brown things, which they clearly aren't. Staring them in the face when they get to that car is probable cause, based on what they knew and what they were investigating. Probable cause, in general, to search under the motor vehicle exception, and, well, reason to believe that that vehicle would contain evidence of the offense of the arrest, which at that point is the robbery, which satisfies the search decision to arrest him. But what about, we don't know if the inventory analysis is necessary, but he's claiming that, you heard him argue, that Aurora only conducts the inventory search when they're going to take physical custody of the car. Since that didn't happen, you can't bootstrap their policy as a justification for the search here when another department actually took the car. What do you make of that argument? Well, and again, I disagree with counsel about what the record says. The officer testified about their inventory policy, and what he states is if a vehicle is to be towed, they have to search the interior for any items and document those items on the tow sheet, and they get into the purpose, which I know is not yet answered in your question totally, but I believe I have it in my notes as page 117. The Aurora officers say that they planned on towing that vehicle. Now, eventually does, and I think it's about when you look at the evidence, 50 minutes after kind of the beginning of this graphic stuff, does Daperville eventually? Did you say 15 or 50? Five-zero. Does Daperville eventually, are they the ones that call the tow and does their tow show up? Absolutely. I do not disagree with that. And also, defense counsel did a good job, and she said, does your policy state that if Daperville is going to tow the vehicle, basically she structured the question in a way where the answer was going to be no. Aurora's policy is going to say we can tow for Daperville and Lyle and DuPage Sheriff's Office, but not these other entities. The officer stated the policy is general. If it's going to be towed, search the interior, and that's to document these things on a tow sheet so that Aurora's not going to be liable if you say I lost my diamond ring in the car. So you're saying your intention should be if Aurora at the time that they did the inventory search intended to assert custody of the vehicle, and it wasn't until later that they realized that they, Daperville had called one of their towing companies, that should initiate the inventory search as a basis for the search, right? Absolutely. Okay. And if Daperville did an inventory search, then what's the harm? If Daperville did an inventory search again? Or are you saying should they have waited for Daperville to come out? Well, nobody's talked about the inevitability of the discovery of the evidence. Sure. And if we assume that all the evidence that Aurora may have inventoried was placed back in the vehicle, and Daperville had a policy of inventorying the items in vehicles it towed, then wouldn't this evidence be inevitably discovered anyway? I completely agree. Did anybody raise the issue of inevitability? I did not because the record doesn't include Daperville's tow policy. I don't want to get into what I personally know about Daperville's tow policy. We're stuck with the record that we have. Well, if the evidence was impounded by Aurora Police, they wouldn't have had anything to inventory anyway, would they? Correct. Well, that's true. Didn't Aurora take possession of the BB gun and the money? I believe. I don't know who took ultimate possession of that. Probably Daperville would have ended up with it at some point. I know that they had it at some point. Okay. Did the Aurora Police officers know where they were? And I'm not being facetious, but did they realize they were in Daperville? I believe they were in Aurora at the time. Then why did Daperville take the power? Because the robbery took place in Daperville. The robbery took place in Daperville. So this took place, this search took place inside Aurora, not Naperville. Yes. Okay. If there aren't any other questions on probable cause of search incident two. Yes, sir. The impression I got when I started reading the briefs was this is a case of transferred intent to the extent that the police officers thought they had a suspect who I think his name was Rounds, but it wasn't Mr. Rounds. It happened to be this particular individual. And just fortuitously, they caught a bird that wasn't the species they were looking for, but they were, I think the phrase is, they were loaded in crime for addressing whoever was going to come their way to investigate whether or not there was a robbery. And regardless of whether it was a ruse or otherwise, at least there was an objective standard for stopping the vehicle. And once they stopped the vehicle, they came to the sides of the vehicle, looked inside and saw in plain view the evidence which they confiscated, which was fruits of the crime, plus apparel worn allegedly during the crime. And then a subsequent later, I think, after they arrested him, the BB gun. Now, that's interesting as to when the arrest actually takes place, and I think I addressed that. Well, did they handcuff him, take him out of the car, then look in the car and find the gun? Yes. So they seized him. They seized him. Before they found the gun. And before they take him from this area where he's seated next to, essentially, the driver's door, they find the gun before that. And we know that because the audio from People's Exhibit 21, he goes off screen, there's no further searching of the car. While he's off screen, they announce that they have found the gun. What was the significance of the fact that they turned on their microphones after a while? Do you know what I'm talking about? Yes. And I think the officer, the first officer to testify, described his reason why they were investigating. They thought they were set up to catch an armed robber, and so he wanted to remain in this tactical position. And the second he felt comfortable, when his partner came up on the other side of the car, he flips his cell phone. Your Honor, I also want to talk a little bit about the mandatory supervisor release argument as well, and if this defendant has a reasonable expectation of privacy in this vehicle, in the contents of the vehicle that was searched by the Aurora Police Department. I realize there's a couple cases, significant cases in Illinois, and one of them is Wilson, and one of them I believe is Conway, Coleman, excuse me. And Wilson is a search of a house where unannounced, the parole officer comes with a couple of police officers, and the eventual defendant is found in this house, and we find that there were drugs in the house, and the court holds that that's okay. The defendant does not have a reasonable expectation of privacy. He's on mandatory supervisor release. He signed that MSR contract like we have here, that's in evidence here, where it says he shall consent to all searches of his person and property under his control. Now, is that known before they conducted the search? Oh, absolutely. I mean, it's a parole officer who's conducted the search. So I don't know that they specifically addressed it, but I can think of a scenario where that would be. It's inherent. Yes. Now, the Supreme Court comes out with a case, Samson, which is out of California, which deals with a situation where police go up to a person who's walking down the street. They learn that he's on MSR, and they search him. And in a footnote, essentially, they discuss how they're not worried about scenarios, where the police wouldn't know because of California's statute that says they're not allowed to do harassing searches. Now, the first district takes that, essentially, footnote and uses that as their basis for reasoning, well, now the U.S. Supreme Court has told us that if you don't know, you can't search, which, number one, isn't really what they said. And, number two, wasn't the basis of their reasoning in the United States Supreme Court case. And it kind of puts Wilson and the first district case at odds. And if you don't have a reasonable expectation of privacy in the thing, that's where our analysis should stop. There's no other scenario where, for example, a person driving a stolen car, what we call a drive-by. So you're saying that the fact that the police officer doesn't know that you don't have an expectation of privacy does not revitalize a lack of expectation of privacy. Absolutely. It shouldn't matter. It doesn't matter. He didn't have it, so how it came about, they found out, and when doesn't matter, you're saying. Absolutely. Okay. So it's yet another alternative argument? Is that the way you're presenting this? Well, it's another alternative argument. I understand this case can easily be decided on probable cause in search and incident to arrest and other theories that people have presented, but I think this is a significant principle because, in the people's opinion, the first district got it wrong. This is an opportunity to right the ship. Although we don't necessarily have to address it, you realize. I understand. We generally tend not to address things we need not address. And I understand that as well, and I understand my arguing for what might be a bold opinion doesn't need to be done in this case, but in the larger view of criminal procedure doesn't need to be done because we need to right the ship. Yes. Your time is up. Do we have any other questions? Thank you. Mr. Levin, you may proceed. Yes, thank you, Your Honor. I'd like to cover several points really fast if I can because I'd like to cover everything. On the MSRA sheet, what Sampson was referring to is state law, and I don't think the counsel covered that. The expectation of privacy is based on state law, so what we have is state law in Illinois, which matches what we have in California, that if the officer didn't know the defendant was on MSRA, then the search would be improper. And I did review the audio tape, and it clearly shows that the search had begun and was going on at the time that they got the information over the radio dispatch about the MSRA status. Moving on to the next issue. The state says in its brief on page 11 on the forfeiture issue, it's worth noting, quote, that the search conductor pursuits probable causes distinct from the probable cause to arrest the suspect. I completely agree with that. The state did not argue the issue of probable cause to search, although they argued the issue of probable cause to arrest are distinct concepts. There's a forfeiture of a probable cause to search, and that's what we have here, that the police have authority to search the car. Moving on to my next point. At what point was the defendant arrested? I cite page R125 of the record, and one of the officers testified that he had received information that Naperville was coming to the scene to arrest Mr. Norris. Just because he was cuffed doesn't mean he was arrested, and, in fact, the prosecutor said, quote, he was not arrested at this exact point when he was cuffed. R277 of the record. So what we have here is a search that occurred prior to the arrest. I'm relying not just on Gant, but Cidron and Smith cited at 22 of my briefs. So let me see if I have this right. So you're saying when he's out of the car, he's under handcuffs by the Aurora Police Department, he wasn't under arrest. That's what the state said at the lower court level, yes. And when did they say he was under arrest? Well, they said Naperville was coming to get him, to arrest him. They were saying that the prosecutor at the lower court level said this is analogous to a terrorist spot where he's not under arrest. Even though someone is handcuffed, that doesn't mean he's under arrest. A handcuffing could be associated with a terrorist spot. So he was not under arrest. And what Cidron was saying is that it's axiomatic that an incident search may not precede an arrest in services justification. So that's what we got there. And as far as the inventory search, so the inventory search, what we have is a, I'm losing my train of thought. It's, again, Naperville is coming to get custody of the defendant. Naperville has custody of Carr. Well, here's the question he raises that's legitimate. Did the Aurora Police Department have any idea that was going to happen when they did the inventory search? And isn't that their intention at the time? They do it, controlling. That's what develops later. Well, yes, I believe that that's what the record speaks to, is that, in fact, Officer Picenti testified to that. It's in the record, and I cited the page, that Naperville is coming to get him. That was what was happening at that time. But that doesn't answer it. When did they learn that? They learned that at the time because Picenti testified, Officer Picenti testified Naperville was coming to get him and arrest him. That's R-27, I believe. Well, does that mean they're coming to get the Carr, too? That's the question on the inventory search. What did the Aurora Police know, and when did they know it? It would seem to me if a municipality stops somebody, they intend to do an inventory search because, at that time, they believe they're taking custody of the Carr. The fact that later on some department, you know, another department pulls rank and says it was in our town, we get the Carr. I don't know if that would vitiate the first search if they believed they were taking custody. I believe at the time that they understood about Naperville, the testimony indicates that they knew that Naperville was going to take custody of the Carr. I'm relying thus on custody of the Carr and that they weren't acting. The question is are they acting pursuant to their standardized procedure? Well, they would if they thought they were taking custody. They had no other procedure to rely on. Well, it's also an objective factor. The question is were they acting pursuant to their policy, and obviously they weren't. What part were they not acting pursuant to? Well, because their standardized policy says that the municipality that's going to have custody of the Carr. Wait, wait, wait. We've been over there. But here's the point. The Carr is in Aurora. It's blocking Aurora streets. It's blocking Aurora traffic. These guys are Aurora police officers. They're going to tow that Carr. At least one of you is mistaken about the record, but the state says that they intended to tow the Carr. Therefore, pursuant to their policy, they inventoried it. Where does that go awry because another department comes in and says, no, we're going to take the Carr? I mean, I would venture to guess that their policy doesn't say, you know, everything's off or everything is undone when another department comes in to take the Carr. Well. So the question is, when does this happen? And you keep saying what Officer Pacente testified to regarding Naperville, telling them we're going to arrest the defendant. Nobody talks about the Carr. How long is it reasonable for Aurora to wait to not do something about moving the Carr? I mean, I appreciate it's the middle of the night, but nonetheless. Well, I would defer to the record. Fair enough. And I'd like to make one more point on that, if I may, and that is not only the issue of Aurora versus Naperville, but there's other evidence showing that this is not a proper inventory search, in that Officer Pacente removed a BB gun from the Carr and put it back, and he wanted to see whether it was a real gun. That was his testimony. Upon examining the gun, he saw it wasn't a real gun and put it back. And Officer Shepard protested what Pacente did. So this shows evidence that the purpose was not to inventory the property in there to protect against claims of loss, but the object of the search was a general rummaging for the purpose of investigating the crime. If he couldn't inventory the implement to determine whether it was a firearm or a non-firearm, then how could the municipality defend against the claim that either his firearm that they replaced with a BB gun, or if they kept the BB gun, he wanted to claim that it wasn't his because he had a firearm, not a BB gun. So until they determine what the status of that item is, how are they supposed to inventory it? Has something that looks like a BB gun or a firearm or a Nerf gun? I mean, how far do you determine what is reasonable to determine what something is? Well, he wasn't actually inventorying it. That's the problem. So he takes the BB gun out of the Carr, takes a look at it, doesn't photograph it, doesn't inventory the gun, put it on a list. Here are the items that are found in the Carr. There's no evidence that he did any of that. What he was really doing was he's looking for evidence of crime, which is unconstitutional. The part I have problems with your argument is, is normally when you inventory a Carr, in addition to inventorying what the item is, there is also a further distinguishing factor, and that is whether it's contraband or not. And if this was a firearm or a BB gun, it might be deemed to be contraband. Would it not? Yes, but it's the manner of how he did it. And without photographing the evidence, without itemizing the evidence on an inventory sheet, just, in fact, his fellow officer criticized him for not following the standardized policy. And that's fully in the record. Does that then mean that the evidence is washed and suppressed, or does it mean that the photograph, or the lack of a photograph, means that the item actually has to be placed into evidence as it is? Well, it would show that the intent of the officers is not to do an inventory search, but it would show the intent of the officers to discover evidence of a crime, to find evidence, to build against the defendant in its investigation of crime. That's the real motivation. So, therefore, what do we gather out of this? The end result is that the State cannot avail itself of the inventory exception because of what we just discussed and the lack of following standardized procedures. So, in case the Court has any more questions, I'd like to defer. Thank you. Thank you so much. The Court's adjourned. We will take the case under advisement and render a decision in a timely manner.